Justice Stevens,
with whom Justice Ginsburg joins, concurring.
This case involves a property owner’s rejection of an offer to place a permanent display on its land. While I join the Court’s persuasive opinion, I think the reasons justifying the city’s refusal would have been equally valid if its acceptance of the monument, instead of being characterized as “government speech,” had merely been deemed an implicit endorsement of the donor’s message. See Capitol Square Review and Advisory Bd. v. Pinette, 515 U. S. 753, 801-802 (1995) (Stevens, J., dissenting).
To date, our decisions relying on the recently minted government speech doctrine to uphold government action have been few and, in my view, of doubtful merit. See, e. g., Garcetti v. Ceballos, 547 U. S. 410 (2006); Johanns v. Livestock Marketing Assn., 544 U. S. 550 (2005); Rust v. Sullivan, 500 U. S. 173 (1991). The Court’s opinion in this case signals no expansion of that doctrine. And by joining the Court’s opinion, I do not mean to indicate agreement with our earlier decisions. Unlike other decisions relying on the government speech doctrine, our decision in this case excuses no retaliation for, or coercion of, private speech. Cf. Garcetti, 547 U. S., at 438 (Souter, J., dissenting); Rust, 500 U. S., at 212 (Blackmun, J., dissenting). Nor is it likely, given the near certainty that observers will associate permanent displays with the governmental property owner, that the gov- *482 eminent will be able to avoid political accountability for the views that it endorses or expresses through this means. Cf. Johanns, 544 U. S., at 571-572 (Souter, J., dissenting). Finally, recognizing permanent displays on public property as government speech will not give the government free license to communicate offensive or partisan messages. For even if the Free Speech Clause neither restricts nor protects government speech, government speakers are bound by the Constitution’s other proscriptions, including those supplied by the Establishment and Equal Protection Clauses. Together with the checks imposed by our democratic processes, these constitutional safeguards ensure that the effect of today’s decision will be limited.